Slip Op. 07-105

## UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS**

_____
SHANDONG HUANRI (GROUP) GENERAL CO.;  :
SHANDONG HUANRI GROUP CO., LTD.;      :
and LAIZHOU HUANRI AUTOMOBILE PARTS CO.,:
LTD.                                  :
                                      :
    Plaintiff,                    : Court No. 05-00648
                                      :
                v.            :
                                      :
UNITED STATES,                        :
                                      :
    Defendant                     :
                                      :
                                      :
THE COALITION FOR THE PRESERVATION OF :
AMERICAN BRAKE DRUM AND ROTOR         :
AFTERMARKET MANUFACTURERS             :
                                      :
    Defendant-Intervenor.         :
_____:

July 5, 2007

**Held:** The United States Department of Commerce's final results are affirmed.  Plaintiffs' motion for judgment upon the agency record is denied.  This action is dismissed.

Trade Pacific, PLLC, (Robert G. Gosselink) for Shandong Huanri (Group) General Co.; Shandong Huanri Group Co., Ltd.; and Laizhou Huanri Automobile Parts Co., Ltd., Plaintiffs.

Peter D. Keisler, Assistant Attorney General, Civil Division, United States Department of Justice; Jeanne E. Davidson, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice; Ada E. Bosque, United States Department of Commerce Office of Chief Counsel for Import Administration, of counsel, for defendant.

<u>Porter, Wright, Morris & Arthur, LLP</u>, (Leslie Alan Glick; Renata Brandao Vasconcellos) for The Coalition for the Preservation of American Brake Drum and Rotor Aftermarket Manufacturers, Defendant-Intervenor.

**Tsoucalas, Senior Judge:** Before the Court is Plaintiffs' Shandong Huanri (Group) General Co., Shandong Huanri Group Co., Ltd. and Laizhou Huanri Automobile Parts Co., Ltd. (collectively "Plaintiffs" or "Huanri") motion for judgment upon the agency record brought pursuant to USCIT Rule 56.2.  Plaintiffs challenge aspects of the United States Department of Commerce's ("Commerce") determination <u>Brake Rotors From the People's Republic of China: Final Results and Partial Rescission of the Seventh Administrative Review; Final Results of the Eleventh New Shipper Review</u>, 70 Fed. Reg. 69,937 (Nov. 18, 2005) ("Final Results").  Plaintiffs contend, <u>inter alia</u>, that Commerce changed its separate rates methodology, and did so without notice and comment.  <u>See</u> Pl.'s R. 56.2 Mot. J. Upon Agency Rec. ("Pl.'s Br.") at 10 ("Commerce abused its discretion when it changed its separate rates practice[.]").  For the following reasons, the Court finds Plaintiffs' contentions to be without merit, and denies their motion.[1]

---

[1]     As a future practice note, the Court directs Plaintiffs' attention to Section 2B of the Court's Chambers Procedures, entitled "Briefs and Appendices."  This section instructs that:

Movant's and respondent's briefs shall not

## JURISDICTION & STANDARD OF REVIEW

The Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2000) and 19 U.S.C. § 1516a(b)(1)(B)(i) (2000). When reviewing the final results in antidumping administrative reviews "[t]he court shall hold unlawful any determination, finding, or conclusion . . . found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ." 19 U.S.C. § 1516a(b)(1)(B)(i). "Substantial evidence is more than a mere scintilla." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Huaiyin Foreign Trade Corp. (30) v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting Consol. Edison Co., 305 U.S. at 229). In determining the existence of substantial evidence, a reviewing Court must consider "the record as a whole, including

---

exceed 30 pages in length, except in trade cases which shall not exceed 40 pages. Reply briefs in all cases shall not exceed 15 pages. . . No brief which exceeds these requirements may be filed without prior written approval of the Court, leave for which will be freely given upon good cause shown.

This rule, and all other Chambers Procedures, are publicly available at http://www.cit.uscourts.gov. In the future, if Plaintiffs' counsel wishes to exceed the prescribed page limits it shall seek the permission of this Court.

evidence that supports as well as evidence that 'fairly detracts from the substantiality of the evidence.'" Huaiyin, 322 F.3d at 1374 (quoting Atl. Sugar, Ltd. v. United States, 744 F.2d 1556, 1562 (Fed. Cir. 1984)).

## BACKGROUND

The facts of this case have been fully set forth in the prior decisions of this Court. The facts relevant to the instant inquiry are as follows. Plaintiff Shandong Huanri (Group) General Company ("Huanri")[2] was an exporter of brake rotors ("subject merchandise") subject to the antidumping ("AD") duty order on Brake Rotors From the People's Republic of China during the seventh administrative review.[3] See Brake Rotors from the People's Republic of China, 69 Fed. Reg. 30,282 (Dep't Commerce May 27, 2004) (initiation). Defendant-Intervenor, The Coalition for the Preservation of the American Brake Drum and Rotor Aftermarket Manufacturers ("Coalition"), was a domestic petitioner in the original antidumping investigation that resulted in the AD order, and an interested party in all reviews of the order. See Brake Rotors

---

[2]    The subject merchandise sold by Huanri General to the United States was purchased from, and produced by its subsidiary, Laizhou Huanri Automobile Parts.   See Pl.s' Br. at 2.  Following the period of review, Huanri General was sold to its current successor in interest, Shandong Huanri Group Co., Ltd.   Id.

[3]    The period of review for the seventh administrative review is from April 1, 2003 to March 31, 2004.

From the People's Republic of China, 62 Fed. Reg. 18,740 (Dep't Commerce Apr. 17, 1997) (antidumping order).   In both the preliminary and final results of the seventh administrative review of the AD order, Commerce denied Huanri General a separate rate. See Brake Rotors From the People's Republic of China: Preliminary Results and Partial Recision of the Seventh Administrative Review and Preliminary Results of the Eleventh New Shipper Review, 70 Fed. Reg. 24,382, 24,387 (May 9, 2005) ("Preliminary Results"); Final Results, 70 Fed. Reg. at 69,939.

Commerce denied Huanri a separate rate, primarily, on the basis that Huanri was controlled by the Panjacun Village Committee. As there was record evidence indicating that the Village Committee operated under the leadership of the Chinese Communist Party, Commerce found that Village Committee was a form of Chinese government.   Indeed, in its final results, Commerce explained that Huanri was "controlled by the Panjacun Village Committee, and . . . determined that this entity was subject to central government control."   As it did in its preliminary results, Commerce continued "to find that Huanri is not entitled to a separate rate in these final results. Because [Commerce] has determined that Huanri does not qualify for a separate rate, [Commerce] determine[s] that Huanri is part of the PRC-wide entity and will be subject to the PRC-wide rate."   Final Results, 70 Fed. Reg. at 69,939 (internal

citation omitted).

Such a finding was necessary because of the People's Republic of China's ("PRC") status as a nonmarket economy ("NME") country. As will be discussed _infra_, in a NME country, a presumption of government control for exporters automatically attaches. See <u>Coal. for the Preservation of Am. Brake Drum & Rotor Aftermarket Mfrs. v. United States</u>, 23 CIT 88, 100, 44 F. Supp. 2d 229, 242 (1999) ("<u>Coalition I</u>") (finding that pursuant to "the broad authority delegated to it from Congress, Commerce has employed a presumption of state control for exporters in a nonmarket economy."). Unless this presumption is rebutted, Commerce assigns the exporter the country-wide antidumping duty rate. <u>Transcom Inc. v. United States</u>, 182 F.3d 876, 882 (Fed. Cir. 1999). In order to rebut this presumption and qualify for a separate, company-specific rate, an exporter must "affirmatively demonstrate its entitlement to a separate, company-specific margin by showing an absence of central government control, both in law and in fact, with respect to exports." <u>Sigma Corp. v. United States</u>, 117 F.3d 1401, 1405 (Fed. Cir. 1997). In the instant matter, Commerce determined that Huanri failed to rebut this presumption with respect to <u>de facto</u> government control.

Commerce took the following steps in determining whether Huanri was free from <u>de facto</u> government control. In investigating

Huanri's eligibility for a separate rate, Commerce issued Huanri a Questionnaire in which it asked the respondents to "describe and explain" who "owns" and "controls" its company, including the "company's relationship with the national, provincial, and local governments, including ministries or offices of those governments." See Huanri General's Resp. to the Department's Original Questionnaire in the Seventh Administrative Review.    In its questionnaire response, Huanri maintained that it "has no relationship with the national, provincial, and local governments, including ministries or offices of those governments." Id.  Next, Commerce considered the "Organic Law on the Village Committee of the People's Republic of China of 1999" ("VCL") placed upon the record by the Coalition.    Thereafter, Commerce issued a supplemental questionnaire to Huanri, inquiring specifically into whether the Panjacun Village Committee owned and controlled Huanri. See Resp. Opposition Pls.' Mot, J. Upon Agency Rec. ("Response") at 2.  Therein, Huanri represented that it is "collectively owned" by the villagers of Panjacun Village, and further stated that the Village Committee "has control over the investment of capital raised by the villagers."    See Shandong Huanri Group General Company Supplemental Questionnaire at 3-4.  From March 23-26, 2005, Commerce conducted an onsite verification of Huanri in Panjacun Village, China.    During its verification Commerce conducted an onsite inspection of the manufacturers' and exporters' facilities,

and examined relevant sales and financial records.   See Verification of the Response of Shandong Huanri Group General Company ("Verification Report") at 13-17.

Following its investigation, Commerce issued its Preliminary Results, denying Huanri a separate rate.  See Preliminary Results, 70 Fed. Reg. at 28,387.   Therein, Commerce preliminarily found "that Huanri General, by virtue of the applicability of . . . other PRC laws . . ., has demonstrated an absence of de jure central government control."   Id. at 24,388.   This notwithstanding, Commerce preliminarily denied Huanri a separate rate because Huanri had not demonstrated an absence of de facto control.   Id. at 24,388-89.   Only the absence of de facto control is at issue in the instant matter.  Together with the issuance of the Preliminary Results, Commerce also invited special comments and additional supporting information concerning this issue.  Id. at 24,389; see also Department's Letter of June 6, 2005.

On November 18, 2005, Commerce issued its final results.  See Final Results, 70 Fed. Reg. at 69,939; see also Issues and Decision Memorandum for the Final Results in the 2003/2004 Administrative Review of Brake Rotors from the People's Republic of China (Nov. 7, 2005) ("Issues & Dec. Mem.").   Consistent with its Preliminary Results, therein, Commerce denied Huanri a separate rate because it concluded that the Panjacun Village Committee is "a form of

government in the PRC." Issues & Dec. Mem. at 18. Commerce explained that "record evidence includ[ing] various provisions of the Village Committee Law, the petitioners' analysis thereof, and references to academic publications . . . indicate . . . that these Village Committees are, in fact, government entities." Id. Moreover, it found that "Huanri had not demonstrated a de facto absence of government control with respect to making its own decisions in key personnel selections, the use of its profits from the proceeds of export sales, and the authority to negotiate and sign contracts and other agreements." Id. at 20 (finding that the Village Committee is "inextricably involved in . . . decisions at Huanri.").

This finding by Commerce represents a departure from that of the fifth and sixth administrative reviews. See Brake Rotors from the People's Republic of China, 68 Fed. Reg. 25,861, 25,863 (Dep't Commerce May 14, 2003) (final results); Brake Rotors from the People's Republic of China, 69 Fed. Reg. 42,039, 42,040 (Dep't Commerce July 13, 2004) (final results). Commerce explained its departure in the seventh administrative review by noting that there was "even more indicia of government control, specifically the Huanri Verification Report and the Village Committee Law, . . . than in the prior Huanri review . . . . [As a result,] the Department . . . reached a different conclusion in this review than

in prior reviews after learning of the extent of the decision-making role of the Village Committee and after analyzing the Village Committee Law, which was not analyzed in prior segments." Issues & Dec. Mem. at 20.

In both the fifth and sixth administrative reviews, Commerce found that Huanri met the criteria for the application of a separate rate and in both reviews, it granted a separate rate of 0.00 percent. See id. The Coalition appealed Commerce's decision to grant Huanri a separate rate in the fifth administrative review. See Coal. for the Preservation of Am. Brake Drum & Rotor Aftermarket Mfrs. v. United States, 28 CIT __, __ 318 F. Supp. 2d 1305 (2004) ("Coalition II") dismissed on other grounds; Coal. for the Preservation of Am. Brake Drum & Rotor Aftermarket Mfrs. v. United States, Slip Op. 01-00825 (June 21, 2005) (not published in the Federal Supplement) (dismissing the action because the subject merchandise had been liquidated). In that case, the Court remanded the matter to Commerce to reconsider granting Huanri "a separate AD duty rate in the absence of the company's production of the PRC's Organic Law of the Village Committee[.]" See Coalition, 28 CIT at __, 318 F. Supp. 2d at 1314.[4]

_____

[4]    The case was later dismissed on jurisdictional grounds, but the substantive law remains persuasive, and relevant to this action. See Jilin Henghe Pharm. Co. v. United States, 123 F. App'x 402, 403 (Fed. Cir. 2005) (not published in the Federal Reporter).

On November 28, 2005, Plaintiffs commenced this action.  In their brief, Plaintiffs characterize the central issue as several sub-issues.  This matter, however, is properly understood as one issue.  As such, the Court shall not address Plaintiffs' ancillary arguments and will reflect only those pertinent to the Court's disposition of this matter.[5]  The issue here is properly viewed as whether Commerce's determination of government control at the village-level is a change in its methodology.  Related to this, although not fully briefed by Plaintiffs, is whether this finding is supported by substantial evidence.  The Court will also briefly address Plaintiffs' claim-in-the-alternative that it should be granted a village-wide rather than the PRC-wide rate, which the Court also considers to be related to the methodology issue.

---

[5]      For example, Plaintiffs argued that Commerce "should not have adopted a new approach for determining whether Huanri was eligible for a separate rate because Huanri had relied on the Commerce Department's previous methodology in deciding to sell subject merchandise to the United States."  Pls.' Br. at 11. Contra, Def.'s Br. at 18 ("Commerce uses a 'retrospective' assessment system where final liability for antidumping duties is determined after the imports have entered the United States."). The Court finds this, and the other ancillary arguments unconvincing. See e.g., Pls' Br. at 42 ("Commerce unfairly punished Huanri General[.]").

## ANALYSIS

### A.   Commerce's Finding of <u>De Facto</u> Control at the Village Level is Not a Change in Methodology.

Pursuant to the broad authority delegated to it by Congress, Commerce employs "a presumption of state control for exporters in a non-market economy." <u>See</u> <u>Sigma</u>, 117 F.3d at 1405.[6] Under this presumption, exporters in an NME receive the country-wide rate, unless the exporter can rebut this presumption by "affirmatively demonstrat[ing] its entitlement to a separate, company-specific margin by showing an 'absence of government control, both in law and in fact, with respect to exports.'" <u>Id.</u> (citation omitted); <u>see also</u> <u>Transcom Inc., v. United States</u>, 5 F. Supp. 2d 984, 989 (1998). "Absence of de facto government control can be established by evidence that each exporter sets its prices independently of the government and of other exporters, and that each exporter keeps the proceeds of its sales." <u>Sigma</u>, 117 F.3d at 1405. Indeed, in determining whether de facto government control exists, Commerce examines evidence of whether: (1) the exporter sets its own export prices independent of the government and other exporters; (2) each exporter retains the proceeds of its sales; (3) the respondent has the authority to negotiate and sign contracts and other agreements;

---

[6]   Commerce has treated the PRC as an NME in all past AD investigations and continues to deem the PRC an NME within the meaning of the Omnibus Trade and Competitiveness Act of 1988, Pub. L. No. 100-418, § 1316(b), 102 Stat. 1107, 1187, 19 U.S.C. § 1677(18).

and (4) the respondent has autonomy from the government in making decisions regarding the selection of its management ("Sparklers test").  See Sparklers from the People's Republic of China, 56 Fed. Reg. 20,588, 20,589 (Dep't Commerce May 6, 1991) (final determination); Silicon Carbide from the People's Republic of China, 59 Fed. Reg. 22,585, 22,587 (Dep't Commerce May 2, 1994) (final determination); see also Coalition I, 23 CIT at 101, 44 F. Supp. 2d at 243.  If an exporter/respondent fails to demonstrate a single factor, Commerce will not assign a separate rate.  See e.g., Certain Tissue Paper Products from the People's Republic of China, 70 Fed. Reg. 7,475, 7,478 (Dep't Commerce Feb. 14, 2005). Instead, where the company fails to rebut the presumption of state control, Commerce assigns the NME-wide rate.  See Sigma, 117 F.3d at 1405.

For the following reasons, the Court finds that Commerce's determination of de facto state control at the village-level is not a change in its methodology.  The Court further finds that Plaintiffs' claim that it should be granted what it calls a "village-wide rate" rather than the PRC-wide rate lacks merit.

### a.   Commerce Did Not Change its Methodology in Reaching its Determination of De Facto State Control.

In reaching its conclusion of de facto state control, Commerce did not change its separate rates methodology but applied

it to the specific facts and record evidence present in the instant matter; some of which was not on the record in previous reviews covering the subject merchandise. <u>Accord</u> Resp. Opposition Pls.' M. J. Agency Record ("Def.'s Resp.") at 6 ("Commerce did not change its methodology with respect to Huanri.); Def.-Int. Resp. Opposition Pls.' M. J. Agency Rec. ("Def.-Int. Resp.") at 10. ("[T]he agency simply addressed record evidence in this segment of proceedings that was not upon the record in earlier segments."). Indeed, the Court finds that Commerce employed the methodology consistently applied in past reviews but reached a conclusion different from its past reviews based on information not previously on the record, i.e., "The Organic Law on the Village Committee of the People's Republic of China" and data contained in Commerce's Verification Report. <u>See</u> <u>generally</u> The Organic Law on the Village Committee of the People's Republic of China, ("VCL") Pet.'s Submission of Sept. 15, 2004 (document issued by the Carter Center); Verification Report, at 5-12.

This Court has repeatedly affirmed Commerce's application of the <u>Sparklers</u> test in determining whether there was an absence of <u>de</u> <u>facto</u> government control. <u>See</u> <u>e.g.,</u> <u>Sigma Corp.</u>, 117 F.3d at 1405-07; <u>Coalition I</u>, 23 CIT at 100-01, 44 F. Supp. 2d at 242-43. Here, Commerce addresses each of the factors of this four-prong test in its Issues and Decision Memorandum. <u>See</u> Issues & Dec. Mem.

at 18-23.  Commerce's analysis of these four factors is heavily reliant upon the VCL and Verification Report, evidence critical, yet missing from the prior administrative review records. See Coalition II, 381 F. Supp. 2d at 1314; Issues & Dec. Mem. at 20 ("[T]here are even more indicia of government control, specifically the Huanri Verification Report and the Village Committee Law, on the record of this review than in the prior Huanri review[.]"). As an initial matter, Commerce found that "Huanri had not demonstrated a de facto absence of government control with respect to making its own decisions in key personnel selections, the use of its profits from the proceeds of export sales, and the authority to negotiate and sign contracts and other agreements." See Issues & Dec. Mem. at 19.  Because Commerce determined that Huanri was not able to affirmatively demonstrate its entitlement to a separate rate, the presumption that exporters in an NME receive the country-wide rate attached.  See Sigma Corp. v. United States, 117 F.3d at 1405.

Despite the presumption of PRC-wide control attaching, in its Issues and Decision Memorandum Commerce engaged in a factor-by-factor analysis of the Sparklers test. See Sparklers, 56 Fed. Reg. at 20,589.  First, with respect to factor one, the authority to negotiate and sign contracts and other agreements, Commerce set forth the following which it found demonstrated that Huanri lacked

the ability to negotiate and sign contracts independently.

> The village representatives (serving in the capacity of Huanri General's shareholder representatives) decided during 2003 to acquire the funds necessary for establishing a tire production plant as part of Huanri General's operations, consistent with Article 19 of the Village Committee Law. However, to pursue this objective (which required a significant amount of capital), the village representatives had to obtain the entire capital investment amount from the Panjacun Village Committee which subsequently furnished it to Huanri General by obtaining a bank loan (using the villagers' households as collateral) and by providing a portion of its rental income received from land lease agreements (see pages 5-6 and 10-12 of the Verification Report). Therefore, we conclude that Huanri General does not have the ability to obtain its own loans. Rather, the evidence on the record of this review indicates that the local government's assistance was required for this purpose.

Issues & Dec. Mem. at 20.  With respect to factor two, the selection of management, Commerce determined that the "Panjacun Village Committee is so intertwined in personnel, and involved in key financing operations with Huanri General with respect to export activities, that there can be no meaningful consideration of separateness between the local PRC government and Huanri General." Id. at 19. Next, regarding the fourth Sparklers factor, Commerce found that the government, rather than Huanri, retained the proceeds of its export sales and did not make independent decisions

regarding the disposition of profits or financing of losses.  It
explained that:

> Our verification findings further note that
> the 41 village representatives (serving in the
> capacity of Huanri General's shareholder
> representatives) have also been directly
> involved in profit distribution decisions made
> at Huanri General as evidenced by shareholder
> meeting minutes examined at verification.
> (See Verification Report at 12.)  Therefore,
> based on the facts mentioned above, we cannot
> conclude that Huanri General makes its own
> profit decisions.  Rather, the evidence on the
> record of this review indicates that the same
> individuals who appointed the village
> committee members also decided how Huanri
> General's profits are distributed, consistent
> with Article 19 of the Village Committee Law.

Id.  Commerce further found that "[d]ata contained in [the
Verification Report] indicates that the village committee decided
not to distribute Huanri General's profits to the shareholders
after Huanri General's first full year of operation (i.e. 2000)."
Verification Report at 12 (emphasis added).  Moreover, "the
shareholder representatives [some of whom are Village Committee
Members] verbally informed the villagers of the decision to
reinvest Huanri General's profits in the company rather than
distribute the profits to them."  Verification Report at 12.
Lastly, although not providing specific facts as to the Village
Committee's control over export prices, Commerce concluded that it
"continue[s] to find, in this review, that the Village Committee is
a level of the PRC government and that the Committee was

inextricably involved in export-related decisions at Huanri."
Issues & Dec. Mem. at 20.  As such, Commerce examined and supported
its finding in applying the <u>Sparklers</u> test.

In reaching its decision, Commerce specifically stated that it
reached a different conclusion in this review (that of <u>de facto</u>
government control) "than in prior reviews after learning of the
extent of the decision-making role of the Village Committee and
after analyzing the Village Committee Law, which was not analyzed
in prior segments." <u>Id.</u> at 20.  Commerce explained that its
determination "reflects the case facts and the new information
concerning the level of government control, specifically, the text
of the Village Committee Law, which provides for higher-level
government control, and the fact pattern which emerged in the 2003-
2004 POR . . . ."[7] <u>Id.</u> at 21. (citing Verification Report, at 10-
12; Preliminary Results, 70 Fed. Reg. at 24,387, 24,388).

---

[7]     Further indicia of government control may be found in
the Verification Report.  Such information includes the facts
that: (1) the "Panjacun village committee (i.e., local government
entity) established Huanri General . . . and provided this
company with additional investment capital during the POR[.]"
<u>Verification Report</u> at 4; (2) "Company officials stated that
prior to January 2004, Huanri Auto had an informal agreement with
the village committee that it would not have to pay land-use
rights as long as it hired local villagers." <u>Id.</u> at 5; (3) "Data
. . . indicates that four of the five village committee members
were shareholders in Huanri General during the POR." <u>Id.</u> at 6;
and (4) [T]wo of the shareholder representatives that elected
Huanri General's board of directors were also village committee
members." <u>Id.</u> at 11.

A close examination of several provisions of the VCL supports Commerce's conclusion of de facto state control.  Indeed, the VCL itself was "[a]pproved by the Fifth Session of the Standing Committee of the Ninth National People's Congress."  VCL at 1. Further indicia of state government control and endorsement of these laws is found in the Articles of the VCL.  Commerce made the following findings regarding the Articles of the VCL: (1) Article 1 states that it "is formulated in line with the relevant requirements of [t]he Constitution of the People's Republic of China;" (2) Article 2 directs the Village Committee to "develop public services, manage public affairs, mediate civil disputes, help maintain social stability and report to the people's government villagers' opinions, requests and suggestions;" (3) Article 5 includes provisions that assign to village committees certain economic responsibilities, such as coordinating village production and promoting the "development of rural socialist production and a socialist market economy;" (4) Article 19 allows village committees to "manage land and other properties of the village that are collectively owned by all villagers," use income collected from village collective companies, and initiate development of new village collective economies; and (5) Article 29 indicates that "the standing committees of the People's Congress of provinces, autonomous regions and centrally-administered

municipalities" exerts control by implementing this law in accordance with regional conditions. See VCL at 1–5; Preliminary Results, 70 Fed. Reg. at 24,387. Based on the VCL, inter alia, Commerce concluded that the "party branch is in effect the core of the village power structure." Issues & Dec. Mem. at 18.

In Coalition II, a case involving Huanri and the subject merchandise in an earlier review, this Court endorsed Commerce's examination of control at the village level, and commented on the necessity of analyzing the VCL. It found that "given the broad statutory and concomitant administrative caution about a nonmarket economy and the longstanding emphasis of the Communist Party on the 'grass roots' of China . . . the agency's separate-rate test should not be limited to proving absence of national-government ownership but should be applied to whatever level of governmental control is implicated." Coalition II, 318 F. Supp. 2d at 1312–13. In speaking on Huanri General, the Court observed that this "collectively-owned enterprise thus may be a most-perfect form of communism in action. As such, there would be little room to differentiate between the business of Huanri General and that of the village and governing village committee." Id. at 1313 (emphasis in original). The Court continued, however, that "the linchpin to this thesis is missing, namely, the village committee law, which may or may not be a promulgation of the central

government and which may or may not provide that government or a subordinate, even grass-roots village, government with ultimate nonmarket control." Id. at 1314.  Indeed, "without the content of that law and the ITA's analysis of the meaning thereof on the record herein, this court is unable to affirm the foregoing de facto reasoning." Id. ("[N]one of the prior  cases . . . ha[ve] considered the nature and impact of that particular law under the U.S. statute that requires the ITA to take the extent of home-market government ownership or control carefully into account."). Due to the "absence of the company's production of the PRC's Organic Law of the Village Committee and any agency analysis thereof" the Coalition II Court remanded the matter to the ITA with the option to reopen the record for submission of the VCL.  Id. Indeed, the Court's emphasis on the VCL and its ultimate decision to remand due to the absence thereof, signifies the importance of the VCL in making a determination of de facto control.  Moreover, that this evidence was deemed necessary for the Court to assess Commerce's finding of control provides additional support that analysis at the village level is not a change in methodology.  The critical difference between Coaltion II and the instant matter is that the missing "linchpin" to the Court's analysis, the VCL, is now present on the record.

For the foregoing reasons, the Court finds that Commerce did

not change its methodology in determining whether Huanri was subject to de facto government control.  Indeed, as demonstrated in the Final Results, Verification Report, Issues and Decision Memorandum and accompanying record information, Commerce reasonably determined that Huanri did not meet its burden of demonstrating the absence of de facto control by the Chinese government necessary for the granting of a separate rate.  Because the Court finds that Commerce did not change its methodology there was no need for the notice and comment that is precipitated by a change in methodology.

> **b.    Plaintiffs May Not Receive a "Village-Wide" Rather Than the PRC-Wide Rate Because if the Presumption of State Control is Not Rebutted, Only the PRC-Wide Rate is Available.**

Anticipating that this Court might find that Commerce's de facto control analysis was not a change in methodology, Plaintiffs argued in the alternative that it should receive what it calls a "village-wide" rather than the PRC-wide rate.   See Pl.'s Mem. at 35-39.  This argument is devoid of support in both fact and law. As such, the Court finds that Commerce correctly assigned Huanri the PRC-wide rate because it did not demonstrate an absence of de facto government control.

It is Commerce's long-standing practice to calculate a single NME-wide rate for those companies that do not qualify for a separate rate. See e.g., Shandong Huarong v. United States, 27 CIT

1568, 1592, Slip Op. 03-135 at 38 (Oct. 22, 2003) (not published in the Federal Supplement) ("[W]here an NME exporter fails to either: (1) rebut the nonmarket economy presumption of state control, or (2) otherwise cooperate with the investigation by failing to respond to Commerce's questionnaire for that review, Commerce may then apply the <u>NME-wide</u> antidumping duty margin to such exporter's merchandise.") (emphasis added) (internal quotation omitted); <u>Tapered Roller Bearings and Parts Therof, Finished and Unfinished, from the People's Republic of China</u>, 62 Fed. Reg. 61,276 (Dep't Commerce Nov. 17, 1997) (final results); Def.'s Br. at 20. Indeed, the "term nonmarket economy country means any foreign <u>country</u> that the administering authority determines does not operate on market principles of cost or pricing structures, so that sales of merchandise in such <u>country</u> do not reflect the fair value of the merchandise." 19 U.S.C. § 1677(18)(A). The statute, however, does not speak to a market economy village or sub-national form of government. Accordingly, because Huanri failed to rebut the nonmarket economy presumption of state control, Commerce correctly applied the only other rate lawfully available, the PRC-wide antidumping duty margin.

**B.    Commerce's Determination of <u>De</u> <u>Facto</u> State Control is Supported By Substantial Evidence and Otherwise in Accordance with Law.**

Although briefly mentioning the phrase "substantial evidence" the Plaintiffs do not put forth any argument claiming that Commerce's determination itself was not supported by substantial evidence. <u>See</u> Pl.s' Mem. at 2 ("[T]he Commerce Department's determination in the Final Results constitutes an abuse of discretion and is not supported by substantial evidence on the record.") <u>Contra</u> Def.'s Resp. at 8 ("Commerce's determination is supported by substantial evidence and consistent with the agency's long-standing appellate court-approved separate rates methodology."). Rather, their argument primarily centers upon whether there was a change in methodology - an argument the Court has addressed <u>supra</u>. Because Plaintiffs sporadically include the phrase "substantial evidence" in their briefs, the Court summarily addresses the issue. As demonstrated <u>supra</u>, Commerce pointed to substantial record evidence and explained its decision not to grant Huanri a separate rate. Accordingly, the Court finds that the determination of <u>de facto</u> state control is supported by substantial evidence and otherwise in accordance with law.

**CONCLUSION**

Based on the foregoing, the Court finds that Commerce properly applied its long-standing methodology in concluding that Huanri was not free from de <u>facto</u> state control.  The Court further finds that Commerce's determination that Huanri did not rebut the presumption of state control and therefore received the PRC-wide antidumping duty rate was reasonable, supported by substantial evidence and otherwise in accordance with law.  Accordingly, Commerce's final determination is affirmed, and Plaintiffs' motion for judgment on the agency record is denied.  Judgment shall enter accordingly.


                                        /s/ Nicholas Tsoucalas
                                         NICHOLAS TSOUCALAS
                                           SENIOR JUDGE

Dated:    July 5, 2007
          New York, NY

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS**

```
_____
SHANDONG HUANRI (GROUP) GENERAL CO.;    :
SHANDONG HUANRI GROUP CO., LTD.;        :
and LAIZHOU HUANRI AUTOMOBILE PARTS CO.,:
LTD.                                    :
                                        :
     Plaintiff,                         :  Court No. 05-00648
                                        :
              v.                        :
                                        :
UNITED STATES,                          :
                                        :
     Defendant                          :
                                        :
                                        :
THE COALITION FOR THE PRESERVATION OF   :
AMERICAN BRAKE DRUM AND ROTOR           :
AFTERMARKET MANUFACTURERS               :
                                        :
     Defendant-Intervenor.              :
_____:
```

July 5, 2007

**JUDGMENT**

Upon consideration of the United States Department of Commerce's <u>Brake Rotors from the People's Republic of China; Final Results and Partial Rescission of the Seventh Administrative Review; Final Results of the Eleventh New Shipper Review</u>, 70 Fed. Reg. 69,937 (Nov. 18, 2005) ("Final Results"), all other papers filed and proceedings herein, in conformity with the Court's opinion in this matter, it is hereby:

**ORDERED** that the Final Results are affirmed; and it is further

**ORDERED** that this action is dismissed.

                              /s/ Nicholas Tsoucalas
                              NICHOLAS TSOUCALAS
                              SENIOR JUDGE

# NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                            Deputy Clerk